**Richmond**

CLARENCE BROOKS

v.

COMMONWEALTH OF VIRGINIA

No. 1002-91-2

Decided December 8, 1992

408

COUNSEL

Ronald P. Herbert (Roberts, Sokol, Ashby & Jones, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Clarence Brooks appeals from a conviction for cocaine distribution under Code § 18.2-248. He asserts that the trial court erred (1) in admitting into evidence a videotape that was unduly prejudicial; (2) in admitting a written transcript of the dialogue from that videotape, that had been prepared by the Fredericksburg Police Department, which was also unduly prejudicial; (3) in admitting the videotape without the establishment of an adequate chain of custody; (4) in denying his motion for a mistrial based on the improper admission of evidence of other criminal acts; and (5) in denying his motion to set aside the verdict. We affirm the judgment of the trial court.

Viewed in the light most favorable to the Commonwealth, the facts adduced at trial were as follows: In March 1991, the Fredericksburg Police enlisted the help of an informant to make drug purchases in "prevalent drug areas," which led to appellant's arrest. The informant originally met with Detective Taylor in a hotel room. Taylor searched

the informant to ensure that he had no contraband or money other than that needed to make the planned purchase and placed a "body wire" under the informant's clothing. Detective Call then followed the informant as he took a cab to the designated purchase area. Although Call did not see the transaction, which lasted less than two minutes, he did see the informant leave, re-enter the cab, and return to the hotel to meet Detective Taylor. Taylor then confirmed that the informant had purchased a $25 piece of cocaine.

Although several officers were in the area at the time of the purchase, it lasted only about a minute, and none of the officers testifying actually observed it taking place. The transaction was videotaped while several officers monitored the informant's body mike. In addition, Detective Lunsford observed the appellant, dressed in light-colored pants, walking up and down the street in the area both before and after the purchase. Detective Taylor, one of the officers who monitored the body mike, recognized the distinctive voice of the appellant, "Gator" Brooks, with whom he had had numerous prior contacts. Detective Call, who had come into contact with appellant on at least fifty previous occasions, also identified the voice and laugh as those of appellant. Finally, a third officer, Detective Lunsford, also recognized the appellant's voice.

Later that evening, Detectives Lunsford, Call and Taylor all reviewed the videotape of the purchase, and testified that it was consistent with what they had heard via the body mike during the transaction. In addition, the videotape showed the passage of time on-screen in seconds, and the tabs which allow alteration of the tape had been removed, both of which helped to ensure that the tape had not been interrupted or altered. A few days later, the officers replayed the tape and prepared a written transcript of the transaction. The transcript, which was admitted into evidence as Commonwealth Exhibit No. 2, revealed that the person identified as appellant made a sales pitch to the informant, attesting to the quality of the product, and claimed to be the seller's partner.

The informant did not testify.

## I.

Appellant contends, in his first and third assignments of error, that the trial court improperly admitted a videotape of the alleged drug transaction into evidence. He argues both that the chain of custody

shown was insufficient to support its admission and that the contents of the tape were unduly prejudicial. Because these assignments of error are interrelated and appear to be somewhat confused by the parties, they will be considered together.

■ The admissibility of a videotape, like a photograph, rests within the sound discretion of the trial court. *Stamper v. Commonwealth*, 220 Va. 260, 270-71, 257 S.E.2d 808, 816 (1979), *cert. denied*, 445 U.S. 972 (1980). If the court determines that the information on the tape is relevant and that the probative value of its contents outweighs any prejudicial effect, it should be admitted. *Id.* Before asking the court to admit a videotape into evidence, however, the party offering it must authenticate it and show that it is relevant. Appellant appears to be arguing in this case both that the tape was not properly authenticated and that, even though it was relevant, its contents were more prejudicial than probative.

■ Videotapes, like photographs, when properly authenticated, may be admitted under either of two theories: "(1) to illustrate the testimony of a witness, and (2) as 'mute,' 'silent,' or 'dumb' independent photographic witnesses." *Ferguson v. Commonwealth*, 212 Va. 745, 746, 187 S.E.2d 189, 190, *cert. denied*, 409 U.S. 861 (1972) (quoting 29 Am. Jur. 2d *Evidence* § 785, at 857). Although appellant argues that the videotape in question may not be admitted under the first theory because no eyewitness to the transaction testified, he overlooks the tape's admissibility under the second theory.

> [E]ven though no human is capable of swearing that he personally perceived what a photograph [or videotape] purports to portray . . . there may nevertheless be good warrant for receiving [it] in evidence. Given an adequate foundation assuring the accuracy of the process producing it, the photograph [or videotape] should then be received as a so-called silent witness or as a witness which "speaks for itself."

*Id.* (quoting 3 *Wigmore on Evidence* § 790, at 219-20 (Chadbourn rev. ed. 1970)).

The evidence showed that the videotape in this case included an on-screen display of the passage of time in seconds and that the tabs which allow alteration of the tape had been removed; these devices helped to ensure that the tape had not been interrupted or altered in any way. In addition, in terms of the audio portion of the tape, three

police officers identified the voice as appellant's and testified that the tape accurately portrayed the events that they heard over the informant's body mike. This evidence, taken as a whole, provided the trial court with more than adequate grounds for determining that the tape was an accurate representation of what it purported to depict. We conclude that the court did not abuse its discretion in this regard.

## II.

Appellant also argues that the tape, although relevant, was unduly prejudicial because of its poor quality. Appellant cites as persuasive authority the Seventh Circuit Court of Appeals' decision in *United States v. Jewel*, 947 F.2d 224, 228 (7th Cir. 1991), which stated that "tape recordings which are only partially unintelligible are admissible unless the recording as a whole is rendered untrustworthy by the unintelligible portions." *Id.* (citations omitted). Appellant contends that so much of the tape in question was unintelligible that it should not have been admitted. We conclude, however, as did the Seventh Circuit in *Jewel*, that "[t]here was ample testimony that the tape, inasmuch as it [was] audible [or viewable], accurately reflected the [events]" at issue. *Id.* Simply because portions of the tape in this case were out of focus or obscured does not render it unduly prejudicial. Based on our review of the evidence, we conclude that the trial court did not abuse its discretion in admitting the videotape.

## III.

Appellant also contends that the trial court erred in admitting a transcript of the dialogue on the tape, prepared by the Fredericksburg Police Department, because it violated his sixth amendment right to an impartial jury. That admission, he claimed, violated the principle that ultimate issues of fact are to be determined by the jury, first, because the transcript represented appellant to be one of the parties to the conversation transcribed[1] and, second, because it purported to be an accurate transcription of that conversation.

Although appellant did not object to admission of the transcript at trial on the basis that it identified him as one of the participants, he did object to the officers' identification of his voice and to the absence of a proper foundation. He also objected to the transcript's admission on the ground that it was within the province of the jury as the trier of

---

[1] The transcript itself lists appellant Brooks as one of the participants in the conversation, instead of using a neutral designation, such as "Speaker 1."

fact to determine what was said. Based on these objections, we find that appellant properly preserved these assignments of error for appeal.

We find, however, that appellant's assignments of error have no merit. Appellant is correct in asserting that the determination of ultimate issues of fact should be left to the jury. However, the listing of appellant as one of the speakers on the tape was not such a determination; rather, it was merely a continuation of the three officers' earlier identification of appellant as one of the speakers they had heard via the body mike. The Commonwealth laid a sufficient foundation to show that these witnesses had a familiarity with appellant's voice such that they could properly express a lay opinion as to the identity of the speaker. Allowing into evidence the written transcript that identified appellant as one of the speakers was supported by this earlier testimony. The jury was still free to determine the credibility of the officers' voice identification based on their testimony at trial. As a result, admission of the transcript did not usurp the jury's function of determining whether appellant was indeed one of the speakers on the tape.

■ Appellant also objects to admission of the transcripts into evidence on the ground that it was the jury's function, as the finder of fact, to determine what was said. The Supreme Court has made clear, however, that it is within the discretion of the trial court to "permit the jury to refer to a transcript, the accuracy of which [has not been challenged,] as an aid to understanding a recording." *Fisher v. Commonwealth*, 236 Va. 403, 413, 374 S.E.2d 46, 52 (1988), *cert. denied*, 490 U.S. 1028 (1989); *see Arnold v. Commonwealth*, 4 Va. App. 275, 278, 356 S.E.2d 847, 849 (1987). Admission of partial transcripts into evidence should be more carefully scrutinized because "[a]fter the jury has heard the recording, subsequent recourse to a transcript during deliberations may create a danger that, by repetition, certain parts of the evidence will be overemphasized, at the expense of purely oral testimony." *Fisher*, 236 Va. at 413, 374 S.E.2d at 52. The Court in *Fisher* did not consider this assignment of error because appellant had failed to preserve it properly; it did state, however, that the danger of unfair emphasis was minimized in that case because the complete original tapes were admitted into evidence, and the jurors could have replayed them in full during deliberations if they so desired. *Id.* at 413 n.3, 374 S.E.2d at 52 n.3.

Under the facts in this case, the danger of unfair emphasis also was minimized because the conversation at issue lasted less than a minute,

and the transcript admitted into evidence contained the text of the entire conversation, not just specific portions of it. The videotape was also admitted into evidence. In addition, counsel for appellant stated that he was sure that the members of the jury had "played [the tape] back a couple of times" because they requested a videocassette recorder during their deliberations. Finally, although appellant complained that he was not present when the transcript was made, he had ample opportunity to challenge its accuracy at trial and failed to do so. These facts, taken together, minimized any danger of unfair emphasis resulting from admission of the transcript into evidence. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the transcript into evidence.

## IV.

Appellant also contends that the trial court erred in denying his motion for a mistrial based on the improper admission of evidence of other criminal acts contained in the tapes and transcript. Although evidence of other crimes is not admissible merely to show the defendant's criminal propensities, admission is proper when "it is so intimately connected and blended with facts proving the commission of the offense charged that it cannot be separated with propriety." *Sutphin v. Commonwealth*, 1 Va. App. 241, 246, 337 S.E.2d 897, 899 (1985). "The law will not permit one accused of [a] crime to go unpunished simply because the Commonwealth cannot prove his guilt without bringing in some evidence which tends to show that he has committed other crimes." *Glover v. Commonwealth*, 3 Va. App. 152, 162, 348 S.E.2d 434, 441 (1986) (quoting *Hall v. Commonwealth*, 143 Va. 554, 561, 130 S.E. 416, 418-19 (1925)), *aff'd en banc*, 236 Va. 1, 372 S.E.2d 134 (1988); *see also Mu'Min v. Commonwealth*, 239 Va. 433, 446, 389 S.E.2d 886, 894-95 (1990) (holding admissible references to prior crimes made by defendant during voluntary confession to crime charged), *aff'd in part*, 500 U.S. 415 (1991).

## V.

Lastly, appellant argues that the evidence was insufficient to support his conviction for distribution of cocaine as a principal in the second degree. As the jury was instructed, a principal in the second degree is one who is "present, aiding and abetting, . . . by words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it." *Frye v. Commonwealth*, 231 Va. 370, 388, 345 S.E.2d 267, 280

(1986); *see Rollston v. Commonwealth*, 11 Va. App. 535, 538, 399 S.E.2d 823, 825 (1991). They were also instructed that he may be held "liable for the same punishment as the person who actually committed the crime." *See* Code § 18.2-18.

■ After receiving those instructions, the jury concluded that appellant was guilty of the offense charged.

When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.

*Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted). It is also within the province of the jury to judge the credibility of the witnesses, "weighing such factors as [their] appearance and manner . . . on the stand, their intelligence, their opportunity for knowing the truth and observing the things about which they testify." *Mullis v. Commonwealth*, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987) (citing *Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949)).

Three police officers who were familiar with appellant recognized his voice and laugh, via their informant's body mike, as one of two people involved in the drug transaction at issue. The three officers later that evening reviewed the videotape and found it consistent with what they had heard via the body mike. One of the officers also testified to having seen appellant, dressed in light-colored pants, in the area both before and after the transaction. Although the videotape did not show the face of the person identified as appellant, it did reveal that he was wearing light-colored pants. The dialogue from the transaction showed that the man identified as appellant encouraged the informant-buyer by assuring him of the cocaine's quality, comparing it to a previous transaction purportedly engaged in between appellant and the informant, and offering to smoke it with him. Although the informant actually purchased the drug from a third party, the evidence was sufficient to support the finding beyond a reasonable doubt that appellant participated in the transaction as a principal in the second degree.

For the aforementioned reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Benton, J., and Willis, J., concurred.