COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judge Duff and Judge Clements[*]
Argued at Alexandria, Virginia


WAKEEL ABDUL SABUR, A/K/A
 WILLIE SEWARD
                                        MEMORANDUM OPINION[**] BY
v.   Record No. 0880-99-2              JUDGE CHARLES H. DUFF
                                            JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge

          Francis C. Terwilliger for appellant.

          John H. McLees, Assistant Attorney General
          (Mark L. Earley, Attorney General; Jeffrey S.
          Shapiro, Assistant Attorney General), on
          brief, for appellee.


     Appellant was convicted of credit card theft and credit card

forgery.  On appeal, he argues the trial judge erred in:

(1) allowing the jury to view a videotape of a Target store

parking lot; (2) allowing the Commonwealth to refer to the Target

videotape in its closing argument; and (3) instructing the jury

regarding the permissible inference allowed from the recent

unexplained possession of stolen goods.  He also contends the

---

[*] Judge Clements took part in the consideration of this case
by designation pursuant to Code § 17.1-400, recodifying Code
§ 17-116.01.

[**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

evidence was insufficient to prove he committed the offenses.

Finding no error, we affirm the convictions.

FACTS

The evidence proved that the victim was in possession of her wallet containing her credit card before she went to work in an administrative building at the University of Virginia Hospital between 8:30 a.m. and 9:00 a.m. on October 23, 1997.  The victim kept her wallet in her purse, which she kept behind her desk in her office.  The victim testified that between 11:00 a.m. and 11:30 a.m. on October 23, 1997, she was standing in the office across the hall from her own office.  She turned and saw appellant standing in the hallway between the offices, a few feet from her office door.  The victim testified that appellant "looked like he might be lost."  She asked appellant if he was looking for the medical records department, and he replied, "Yes."  The victim gave appellant directions, and he left.  Another witness saw appellant in a nearby building at the university on October 23, 1997 at about 10:30 a.m.

The victim did not notice anything else unusual around her office that day.  Later that evening, the victim learned that her wallet was missing from her purse.  The next morning, an employee of the credit card division of the victim's bank telephoned her and questioned her concerning the extensive use of her credit card over the past twenty-four hours.  The victim reported the stolen credit card to the police.

-

A receipt from a Food Lion cash register indicated that the victim's stolen credit card was used at a Charlottesville Food Lion store on October 23, 1997 at 12:28 p.m., about one hour after the victim saw appellant standing near her office. The victim stated that she did not sign the credit card receipt from the Food Lion store and that she did not give appellant or anyone else permission to use her credit card.

A videotape from the Food Lion store ("the Food Lion tape") was admitted into evidence, and evidence was presented that the videotape represented the transaction made at the time and at the cash register where the victim's stolen credit card was used in that store. Evidence was also presented that the victim's stolen credit card was used twelve more times on October 23, 1997 at various locations in Charlottesville and in and around Richmond, Virginia.

Officer Kimberly Pugh investigated the incidents. She interviewed appellant on November 7, 1997 concerning the charges on the victim's credit card. Appellant told Pugh that he might have been in the Food Lion store, but that he used his own credit card. Appellant also told Pugh that he had been at the University of Virginia Hospital a couple of weeks prior to the interview, but he denied any knowledge of the credit card theft. Appellant admitted that he may have been in some of the other stores where the stolen credit card was used, but he denied using the victim's stolen credit card.

-

During the trial, the Commonwealth made a motion to show the jury a videotape ("the Target tape") from a Richmond, Virginia Target store parking lot. The Target tape depicted the parking lot shortly after the victim's stolen credit card was used to make a purchase in that store on the evening of October 23, 1997. Appellant objected to the admission of the tape on the ground of relevancy. The trial judge overruled the objection, and the tape was shown to the jury.

After the tape was played for the jury, the Commonwealth moved to admit the tape into evidence. Appellant renewed his relevancy objection. The following colloquy occurred:

> TRIAL JUDGE: I'm going to sustain, I don't see where it's relevant. It hasn't been tied up to this defendant. I haven't heard this man identify this man on that tape.
>
> COMMONWEALTH: Isn't that an issue for the jury--I would have asked him but I thought--
>
> TRIAL JUDGE: I don't know, nobody's identified the defendant in that tape. I sustain the objection.

Later, the Commonwealth attempted to ask Officer Pugh to identify appellant from the Target tape; however, the trial judge sustained appellant's objection to the testimony, ruling, "the jury can look at the tape and make their own conclusions. They don't need some witness to say I've looked at the tape and this is who I think it is." When the Commonwealth again moved to admit the Target tape, the trial judge stated, "The jury's seen the tape."

At the conclusion of the evidence, the Commonwealth proffered a jury instruction regarding the permissible inference allowed from evidence of the recent possession of stolen goods. Appellant objected to the instruction, but the trial judge overruled the objection and gave the instruction to the jury.

During its closing argument, the Commonwealth made reference to the Target tape. Appellant objected on the ground that the tape was never admitted into evidence. The trial judge overruled the objection, stating, "But the jury saw the tape, so I think that counsel can comment on the tape."

### ANALYSIS

### I. and II.  The Target Tape

"'[E]vidence is relevant if it tends to establish the proposition for which it is offered.'  Evidence is material if it relates to a matter properly at issue." Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987) (citation omitted).

Although the record is somewhat unclear as to whether the Target tape was admitted into evidence, the record clearly indicates the jury viewed the tape. The content of the Target tape was material because it related to a matter properly at issue--the identification of the credit card thief and forger. The content of the Target tape was relevant evidence because it depicted the Target parking lot just after the victim's stolen credit card had been used in that store on the same day the card

-

was stolen.  Although the Target tape was not conclusive proof that the same person used the victim's credit card at both the Food Lion and Target stores, it was evidence relevant to that determination.

Moreover, videotapes may be admitted into evidence as "'"mute," "silent," or "dumb" independent photographic witnesses.'"  Brooks v. Commonwealth, 15 Va. App. 407, 410, 424 S.E.2d 566, 569 (1992) (citations omitted).  "'[E]ven though no human is capable of swearing that he personally perceived what a photograph [or videotape] purports to portray . . . there may nevertheless be good warrant for receiving [it] in evidence.'"  Id. (citation omitted).  Thus, it was not necessary that a witness identify appellant on the Target tape.  Rather, the content of the tape acted as a "silent," "independent photographic witness."  Id.  Moreover, "[t]he fact finder may take into consideration and regard as evidence details of [a] photograph about which no testimony has been offered."  Wilson v. Commonwealth, 29 Va. App. 236, 240, 511 S.E.2d 426, 428 (1999).  Accordingly, the trial judge did not err in allowing the jury to view the content of the Target videotape.

Because we find the trial judge did not err in allowing the jury to view the Target tape, we likewise find the trial judge did not abuse his discretion in allowing the Commonwealth to refer to the Target tape in its closing argument.  As stated above, the content of the tape was relevant and material.

-

Furthermore, the trial judge has broad discretion in supervising closing arguments.  See Jordan v. Taylor, 209 Va. 43, 51, 161 S.E.2d 790, 795 (1968).

### III. and IV.  Sufficiency of the Evidence

Appellant contends the evidence was insufficient to prove he committed credit card theft and credit card forgery based on the lack of identification evidence.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  While the case against appellant is circumstantial, convictions based on circumstantial evidence will be upheld on appeal as long as "'all necessary circumstances [are] consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (citation omitted).

The evidence proved appellant was seen near the victim's office on the day the credit card was taken.  Within one hour of this event, the victim's stolen credit card was used at a nearby Food Lion store, and the jury viewed a videotape of that transaction.  Therefore, the jury had the opportunity to see the physical characteristics of the user of the stolen credit card.  Moreover, appellant admitted to the officer that he may have

-

been in the Food Lion store and several other stores where the victim's stolen card was used. Although appellant denied he paid for merchandise with the victim's credit card, the jury was not required to accept his statement in its entirety. See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Therefore, from the evidence that appellant was outside the victim's office on the day the credit card was stolen, the Food Lion tape, the timing of that transaction, and appellant's admissions, the jury could conclude beyond a reasonable doubt that appellant stole the victim's credit card.

Appellant also contends the Commonwealth provided no proof that he committed forgery because no handwriting expert testified that his handwriting was on the Food Lion receipt. However, it was not necessary that a handwriting expert testify concerning the writing on the Food Lion receipt in order for the jury to conclude appellant forged the document. From the evidence of the Food Lion tape showing the actual transaction made with the victim's stolen credit card, the jury could conclude beyond a reasonable doubt that appellant, with the intent to defraud the victim, forged a sales draft or used the victim's credit card number, or uttered as true the forged draft, knowing it to be forged, in violation of Code § 18.2-193(c).[1] Therefore, the evidence was sufficient to prove

---

[1] In his brief, appellant also argues that no evidence was introduced as to what name was written on the Food Lion sales

-

beyond a reasonable doubt appellant committed the charged offenses.

## V.  Jury Instruction

Appellant contends the trial judge erred in giving the following jury instruction:

> Proof of exclusive personal possession by the defendant of recently stolen goods is a circumstance from which you may reasonably infer that the defendant was the thief, unless the defendant offers a reasonable account of possession consistent with innocence which the Commonwealth has failed to prove untrue.

At trial, appellant objected to the instruction on the ground that no evidence was presented that appellant was found in possession of recently-stolen goods.  The trial judge overruled the objection, finding that the evidence of the use of the stolen credit card at Food Lion by a person who appeared on the videotape to be "similar to defendant" was sufficient evidence to support the instruction.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted).  The evidence relied on to support a proffered instruction must amount to "more than a

draft.  However, appellant did not present this argument to the trial judge.  Accordingly, Rule 5A:18 bars our consideration of this argument.

-

scintilla." Morse v. Commonwealth, 17 Va. App. 627, 633, 440 S.E.2d 145, 149 (1994). "Whether the recently stolen inference is permissible . . . depend[s] . . . upon whether the possession was knowing and recent." Bunn v. Commonwealth, 21 Va. App. 593, 600, 466 S.E.2d 744, 747 (1996).

The Food Lion receipt showed that, within one hour of the victim's sighting of appellant near her office, the victim's stolen credit card was used to purchase merchandise at a local Food Lion store. The jury viewed the Food Lion tape depicting the transaction using the victim's stolen credit card. Therefore, sufficient evidence was presented of the recent, post-theft use of the stolen credit card to support the jury instruction.

In his brief, appellant also argues the trial judge erred in giving the jury instruction because credit card offenses are statutory in nature; the instruction was an incorrect statement of the law; and the instruction violated appellant's constitutional right to remain silent. However, appellant did not present these arguments to the trial judge. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of these arguments on appeal. Moreover, the record does not reflect any

-

reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

We find no error and affirm appellant's convictions.

<u>Affirmed.</u>